Good morning, Your Honors. If it pleases the Court, my name is James Rittinger. I believe I have 15 minutes. I'd like to reserve five, if that's okay? Yes, but you'll have to keep track of your own time because that will continue to show the total. I understand that, Your Honor. Why don't you just tell us what you think your strongest point is? I have too many, Your Honor, but I think you can start from the beginning to the end, so I will go in order and I'll do it very quickly. Well, there's five issues on the appeal, and then, of course, there is the motivating factor, the way that Gross changed the law. If you want to start at the back, there's a motion pending, which I don't think has been dealt with, where we asked to submit supplemental briefing. But, quite frankly, I don't think it's necessary. I think the Court knows what happened in Gross. Let me just say quickly, the opposition to that motion, which was also on the merits, was, one, that the instruction that was given was not a motivating factor instruction. I think that is not correct. Let's put it that way. It was the Ninth Circuit instruction that was given. The other argument that was made with respect to that is that we did not ask for a but-for instruction, and we didn't. And I think the law could not have been clearer that the motivating factor was the law. There is some dispute, or some debate, I guess, as to whether this Court had held absolutely specifically. But what my opponent does in saying that a but-for, a motivating factor, was he cites two cases that were before Price-Waterhouse brought in motivating factors. So, clearly, since Price-Waterhouse, I'm not aware of any instruction. And, of course, the Ninth Circuit model instructions were changed a day or two after the Gross decision came down. So that means we have a new trial. We don't want a new trial, Your Honor. We want to go to the beginning. Let's talk about the 120 days. Did the Gross case come down after the jury was instructed? Yes, it did. But I don't think there's any question that this — if there's a question in that, I would like to brief it. But I don't think there's any question that the Court has to — we have to go back and have a new trial as a result of Gross. Let's start with the 120 days, which I think is extremely strong. Let me ask you this. Should the district court make that decision, or should we? Oh, I think you can make that decision. I know we can. Well, I think you should make it. I have more questions. I won't go any further than that. I have more questions. I'm afraid — I heard that coming. I'm afraid of the decision that I might get, Your Honor, because I haven't gotten many good ones. And the ones that I did get, the rewards that I got — the rewards that I got turned out to be sanctions. That's the Cloutier testimony in damages. And I don't think there's any question about that. But I'm going to try to get to the 120 days, and I'll move forward with respect to that. On the 120 days, first of all, it was 563 days. That was the time. All right? There's no question about that. And at the time — at the time that the — That was when it was in State court? It was — it was served in State court. The Lee case says that State law should have been applied. It is true that we argued in the motion both State and federal court — federal law. But the district court also considered both State and federal law. The 120 days was the same. The difference between State and federal law was that under Nevada law, you have to show good cause. And if you don't show good cause, you're out. Under federal law, you're supposed to show good cause. But if you don't show good cause, then the court still has the discretion to let it go. But the district court was clearly wrong in what it said, because it gave us the Hobson's choice. You removed, and that gave them a whole new 120 days. I don't know how to — one thing I don't have a problem with is talking low, Your Honor. I was going to say, why don't we turn that off? It would be better. Put that away. I'm sorry. So the district court was wrong at what it did. Now, let's look and see what — Wait. May I ask a question? Does that mean we're not recording it? We are recording it. Okay. Let's look and see what the plaintiff says, because clearly there had to be good cause. So what does he say this good cause was? Well, his first good cause was the lawyer who represented the plaintiff at the time did all this because he didn't want to waste resources of the court. He wanted to wait until the EEOC decision came out of the right-to-sue letter. Aside from the fact that he could have gone back and asked for the right-to-sue letter. The problem with that — there's a number of problems with that. First of all, it's not in the record. There's nothing in the record at all. There's a cite to the record where the EEOC proceeding is cited, but nothing about the attorney that was representing Mr. Dillon at the time wanting to preserve resources, and that's why he didn't serve. And even if there was, I'm not sure that's a legitimate reason anyway. But then you have the problem, well, I was preserving my resources until the EEOC letter came down. Well, he served the complaint, I think it was at least 60 days or 150 days after the EEOC letter, 60 days after the right-to-sue. So here he is supposedly preserving assets so he can get on this case and he doesn't do it. So there's no good cause. The second thing that they say is, well — Is that issue waived? I don't believe it's waived at all, Your Honor. Did the district court ever hear this? Oh, it's waived by the plaintiff, not by us. I understand. No, it had nothing in the record about that, nothing. Well, I can pass quickly on the motion, too. There's another one. And sometimes defending a position of the district court is best exposed by the merits of the arguments against it. The second argument on that is, well, there was a motion made in State court. Well, there was a motion made in State court. That motion was to extend. It wasn't done because the plaintiff's attorney did it on his own. He was told to do it by the district court. And that motion was never acted upon. Now, there's an argument actually in the briefs that the district court here, the Federal district court, was ruling on that motion. Well, again, you've got a problem. It's not in the record. It was never in the record. So what's the real good cause? The one thing that they all stand on, the statute of limitations is wrong. Yes. The motion to extend wasn't in the record or there was no discussion at all about that? It wasn't in the record. It's not in the record. There was a reference to it. As a matter of fact, when we removed, there was a certification that both sides signed that there were no motions pending. So, I mean, you know, and again, here you have it. So let's get past that and let's go to the next issue. As I read the Nevada rule, it says, if the party on whose behalf such service was required fails to file the motion to enlarge the time for service, the court shall take that failure into consideration in determining good cause. So as I understand it, then that's one thing that would maybe go in your favor. But as I understand it as well, we still have to apply all of the tests of Scrivener versus the Eight Judicial Circuit. Yes, Your Honor. And I guess what I would say there is other than the fact that the statute of limitations is wrong, and there's none of those factors favor them, the statute of limitations has run. And I don't think this could be you can you can search far and wide. There are cases where obviously where discretion is exercised and good cause is shown, but not on the time periods that you've got here. I can't find anything that's close to that. And it's not it's not just once. It's twice. They missed it on the 120 days and then they missed it on the 90 days. The statute of limitations is the result of no good cause. The worst case scenario for us, quite frankly, we mentioned this in the brief, is that I guess it could go back to the district court to see if there was good cause. But then again, I would point out that the district court said at the time that there was no good cause shown. But he didn't feel that he had to he didn't feel that he had to find it. Well, did he really say that there was no good cause? I thought he said excuse. There's no excuse for failing to serve the defendants in a timely manner or the excuse was weak. However, the defendants have not shown that they suffered any real harm by admittedly by the admittedly untimely service. That's the best I can see that he ever said. I think I'll accept that. Your Honor, maybe I've said too much, but there has been prejudice, Your Honor. The prejudice is the length of time. The prejudice is the back pay award. There clearly was prejudice. But if time limits are going to make anything at all, they're going to mean anything, there has to be cases that You lost the case, but that doesn't count. I'm sorry, Your Honor? You may have lost the case, but I don't think that counts as prejudice from the untimeliness. Well, Your Honor, just the time period at all, I don't know. You know, if you look at the – look what happened with the damages. The damages, they violate the – Did you lose any witnesses as a result of the untimeliness or did – Well, I would say we probably lost Rose Titus, but that's not part of his appeal. Okay. Yeah. Between the time that your deposition was taken and the time of trial, we lost her. But if I can – if the Court has any questions, I'm running quickly out of time. I'd like to get the cludea. If the Court has any questions about the cludea, I would say this, that that is clearly a situation where the door was opened by the plaintiff's questioning. Then the district court at the time that he let him come on said it was because of that. Now, when we went back to the post-trial briefing, the district court said, you know, he got the point, well, wait a minute. The door could not have been opened by plaintiff. That's not fair. But you opened the door yourself by putting on a defense. Well, I can tell you, Your Honors, that – I mean, I guess the irony of this thing is the order came down on a motion for summary judgment where the district courts – where we said he never disclosed who he was, so he said, well, you can't use his affidavit. I'm not going to consider it. But you lose the motion for summary judgment. Now, plaintiff scrambled time and time again to try to get that order taken out. Then when we get to trial – What is our standard review on that particular matter? Your Honor, I think that was probably an abuse of discretion. But I do believe that discretion is an abuse. If you went on that point, is that a – If there's any questions on that, I'd like to get to the criminal conviction. Let me ask one question. If you went on that issue, is that just a remand? I believe it is, Your Honor. Yes, I believe that the only way that we can not – we haven't talked about sufficiency of evidence. I think in order to have this case finally over, and I think it should be, Your Honors, it really is on the lack of service. It would not be on either that or the Cloutier testimony or obviously the damages. Let me quickly talk about the conviction. The district – the district – obviously, the district – that is, again, abuse of discretion. But there's also the incorrect application of the law. The district court made a factual finding. And that factual finding was that the probative value of the felony conviction was enormous. Well, that isn't exactly what he said. Substantially. Your Honor, I hope I haven't hyperbolized that. I do believe – I think you have. Substantially. Without the word substantially plugged in there, I think it may well be admissible. I don't think that it substantially outweighs the prejudice. That's what he said. No, but that's when he was balancing – that's what he said when he was balancing the probative value versus the prejudice. But the probative value, I believe he did say was enormous. And he said what probative value was. He was correct about that. He said it's trustworthiness. But, again, we're on abuse of discretion here. We really are. And this is a 14-year felony. Fourteen years from the day of the trial. And we're on an abuse of discretion. I hope we got a better argument on other issues than that. Because now I'm a DJ. I got a felony in front of me that was committed 14 years ago. And the statute generally would say I ought not let it in unless I really want to. And I'm going to say because he suggested he wasn't letting it in, it's an abuse of discretion? Your Honor, I think he got the law wrong and, therefore, abused his discretion. Probative value means trustworthiness. He said there was enormous – I believe he said enormous. Maybe it was substantial probative value. Obviously, if there's enormous probative value, there's going to be substantial prejudice. It can't be the same kind of prejudice. It can't just be that because it has high probative value, every time you go higher in the probative value, the more prejudiced it's going to be. And that's what happened here. He made no finding as to what prejudice really means. If you want to save your time for other issues on rebuttal, you better do so. Thank you, Your Honor. Before I start, I would note we have a cross appeal. Am I entitled to rebuttal on that? No? Okay. May it please the Court, my name is Randy Rumpf. I represent Larry Dillon. First of all, I want to say that in this trial, it was universally accepted by every witness that Larry Dillon was an excellent salesperson for that company. The defendant so testified. The plaintiff's witness so testified. They stipulated that he was replaced by someone substantially younger, and then there was evidence that the reason given was a bald-faced lie. They claimed that he had forged a client's signature multiple times and that he admitted it, which he denied and which the jury accepted that denial. He was warned by his boss before he was terminated, the company is targeting you for termination because of your age. Mr. Kennedy, his boss, told third parties, I fired him because of his age. Mr. Rumpf, you're not making an argument to the jury here. I appreciate this is your best argument. I appreciate you got a million dollars two times on that. But I think you ought to hit this issue stead on about why you didn't serve. Well, I was a counsel at the time. But what they did was. . . You were not? I was not. That's good, given that there stands a malpractice claim on that one. That may be true. I was not. What they did was the counsel at the time did supply the court with the EEOC documents, and it can clearly be inferred that they were arguing to the court, we've been arguing this before the EEOC. We have been involved in this same issue in an administrative proceeding for over two years. That went on for over two years. Now, that doesn't matter. That really doesn't matter because they received the notice of letters, a rights letter from the EEOC in October 2002. They still didn't do anything until March of 2003. Approximately five months. Yeah, and they only had 120 days. So that's not a big argument. Let's go on with something that really gets to the issue. Well, I would note also that the defendant did admit in the pleadings below that the issues, this is at plaintiff's supplemental record 25, he is pursuing long-lost state law claims that are based on the same facts as the dismissed EEOC complaint. So they admitted in the record below, we've been arguing these same issues in front of the EEOC. But that goes to the second issue, really, as to whether we ought to let you amend to add another claim. Let's talk about the motion to dismiss for timely service. First of all, what the judge said is he said when they removed it, it started a new time period. If you look at the GGG pizza case, which there's only a handful of cases that have really addressed this, and they're district court cases. There's never been a circuit court that's addressed this. And he acknowledged that. Some of those cases disagree with each other. But if you look at the GGG pizza case, the facts are on all four. There was service of a summons before removal. Do I have anything in this record that says counsel relied on any of those cases in determining when to serve? I think the judge did. Oh, I think the judge had to make a ruling. That's not the issue in front of me. I've got a de novo ruling to make. I don't have to go to abuse of discretion here. I've got a de novo ruling. I've got nothing in here that says counsel relied on those cases and, therefore, didn't serve until late. I want to know, given the factors in Nevada law, in Scrivener, or however you say that, versus the 8th Judicial District, what is it we're going to rely on to get you around losing this case? Well, I pointed out, if you look at Scrivener, the Nevada Supreme Court listed a number of factors that you look at. And they specifically noted in Scrivener no one factor outweighs the other. And they specifically noted it is within the sound discretion of the district court to make that decision. But the district court didn't make the decision. I'm sorry? The district court made no decision about this. It did note Scrivener. In the order, it did list it. Is there ever any order made here by the district court? It noted the case. It didn't go into the factors, but it noted the case. Did it ever enter an order? Yes. Where? Where in the record do I find that it entered an order? On this issue. Well, what he did was he said he went with the starting a new clock with 120 days. That's what the lower court ruled. And my argument, and that's what I said, the Triple G pizza case is right on all fours. They effected service. It was untimely, but they did it before removal. And then the court said, well, you still have it. Once you removed it, you have another 120 days. But that's what another district judge did in New York, wasn't it? That's right. And there's, again, there's not a whole lot of case law on the issue of starting the clock. But that's what this district judge hung his hat on. And my argument in my brief was a district judge, you can uphold him for any valid reason. And so if you apply Rule 4, you can uphold him. If you apply Scrimer, you can uphold him. But he went with the other. What is my standard of review? Well, I think it's an abuse of discretion. Again, if you look at. . . Do you think this is an abuse of discretion decision or is it de novo? Well, what they argue is it's de novo as to what choice of law you have. I don't want to know. I don't know. I don't want to know. The choice of law is de novo. But they weighed that. They said apply federal law, Rule 4. What is the discretionary decision that we are reviewing? On the motion to dismiss the 120 days. Whether they had the 120 days? Whether they should be granted an extension because they didn't serve it within the 120 days. Whether they should be granted an extension under Rule 4, the federal rules, or Rule 4, the Nevada rules. That is the discretion. That's what the advisory court said in Scrimer. It's a discretion as to whether you grant an extension of the 120 days and grant additional time to serve. So if you take out the triple G pizza and the starting the clock, which is what he did. He didn't address the others. But you can. You can uphold him based on anything that's in the record. But doesn't the judge under Nevada state law have to find sufficient cause to extend? I'm sorry? Doesn't the judge, the district judge, applying Nevada state law, he has to make a finding of sufficient basis for extending it? Well, he did say, he said there was evidence shown, but it was weak. Did he go into the Scrimer factors? No, because he jumped over to the start the clock over, which is the triple G pizza issue. So he said, well, I don't have to get into that. There was a showing. It was weak. But in the record, you may uphold it if there's anything in the record. But he has an obligation to make a finding of sufficient basis, doesn't he? I mean, not as to whether he did or didn't, but there is an obligation under the law. If he addressed it, yes. But he didn't. He went with the triple G pizza issue. But there are sufficient facts in the record to show that under Scrimer, under Rule 4, this Court, there is a huge, vast body of case law under Rule 4 of the federal rules, the Supreme Court rules, Ninth Circuit rules that we've stated, that say you don't even have to make a showing. If there's an ultimate backstop, if you will, that this Court has as a court of equity to allow an extension of the 120 days and grant a plaintiff additional time to serve. And that's what I argue. You can still apply that rule and that ultimate backstop to this order, because even though he didn't. Were those presented to him? Yes. The Mann case, I believe, was addressed. But that's what – and Burdette. Burdette is what prior counsel did submit to him. No, honestly, he didn't address this because he went to that restarting the clock issue. But he did say there was a showing, although it was weak. And they did do that. Okay. Then maybe you better go to some of the other issues. The other issue that we appealed was the willfulness issue. And EEOC v. Papeliff was this Court's decision in 1997. In that case, it's on or off force here. In that case, you had a store manager who made age comments about the plaintiff. And he lied about why he fired the plaintiff. You had an HR manager that did not make age comments but also gave a pretextual reason. And this Court said the pretext given by the store manager and the HR manager was sufficient to support a willfulness finding. Here we have Mr. Kennedy making age comments, my client's immediate supervisor. I think he alone is sufficient to buying the company. But he set forth a false reason for forging a document. That false reason was repeated by his boss, Mr. Bissig, who was a regional manager over 18 states. It was repeated by Mr. Bissig's boss, Tom Krebs, who was a vice president. So we have not only my client's immediate supervisor but all the way up the corporate ladder to the vice president saying, you forged a document and you admitted it, which was a bald-faced lie. If you take this Court's decision in Paplet and apply it there, I don't know why it doesn't apply. They said, well, we didn't show that Kennedy had sufficient knowledge. This Court in Paplet and in Pasatino under the punitive damage standard, which is about the same for willfulness, said if you give a pretextual reason, that's sufficient for a finding of punitive. That's what this Court held in Paplet. It's sufficient. Do you want a new trial? I'm sorry? Do you want a new trial? No. Well, then why are you arguing so hard on this? It seems to me that this is just an issue that would be of any interest if we send this back for a new trial. Otherwise, the trial's over. Why appeal it? If you're satisfied with what we got, why are you making such a big deal of this? Because the jury found a willfulness. Well, I understand. I understand, but what are you going to get out of it? Well, you get a doubling of the back pay. Okay, and that's all you want is that doubling on remand. Right. That's our issue on the willfulness. On the issue of Coutier, that was the Court's discretion. I covered that in our brief. On the issue of the jury instructions, the one thing that he didn't tell you is that there were additional instructions. There was the phrase motivating factor. Those two words were in the instructions, but they went undefined. The judge never defined for the jury what motivating factor is. He did put instructions in that were compliant with Gross. For instance, he told the jury you had to find that they terminated Mr. Dillon on the basis of his age. The Supreme Court made this statement. Let me ask you this question. If I find the jury instructions do not give the jury the Gross holding and the Gross jury instructions and his instructions do not do it, what is my only thing I can do? Now, under Chancellier, you can look and see if their defendant's rights were substantially harmed. In that case, they said if the evidence is weak for age discrimination, you can get a new trial. Certainly implied, if you have strong evidence, you don't get a new trial. Here, we have direct evidence of age discrimination and age bias. This is not a weak case. This is a direct evidence case. In Chancellier, you can still hold in favor of the plaintiff even if you find that they were noncompliant with Gross. I believe it was either Kelly or Chancellier that said that. So you can still rule for the plaintiff on that. So what case should I really look at? I believe it's Chancellier. It's a Ninth Circuit case. Okay. That's the case you're relying on? That's what it – well, again, they requested a briefing on this topic. I opposed that by saying – Yeah, I thought you opposed it. I didn't go into the Chancellier issue because I thought we might rebrief it. I said I don't even think we'd get to the issue of briefing because the court – their instructions were proper. He said you have to find that my client was terminated because of his age. So if I don't agree with you on that these instructions met that's Gross, you want to brief it? Well, I would like an opportunity. When was this raised? When was what raised? The issue. The issue was raised by the defendant post – after their initial brief because that's when Gross came down, after we started briefing. The case was decided, but wasn't it pending before that? Gross was pending? Yes. Is that your question? Yes. Gross was pending. Yes. So they asked that it be briefed, and I said I don't think we can get to briefing because he gave Gross compliant. Weren't they in as good a position as the Gross people to object to the instruction at trial? I also added that to my opposition to their motion to brief that issue. I agree. They were in a good position. That's been this – there are older Ninth Circuit cases. There's even a 2003 case. How do I deal with Harper v. Virginia Department of Taxation, the 509 U.S. 86, 1993 United States Supreme Court case that says, in a civil case, if we change the law, you apply it retroactively? I agree, but if – but again – It doesn't matter who subjects to what or who doesn't. If you don't do it and it's still on appeal, we apply it retroactively. And if Gross has not been done and not been done correctly, we've got a new trial, haven't we? But I – my authorities that I showed you, it's a Ninth Circuit case that says you've got to look at all of the – all of those instructions as a whole. And as a whole, there was a because of. There was a but for. There were other instructions that were Gross compliant. And the authorities I cited in my opposition said that when you look at them as a whole, you might have a bad instruction, but sandwiched between compliant instructions, it's okay. And that's what I said. Okay. That wasn't my briefing. You're done. Thank you. Thank you. Are there any questions that the Court has? No, I don't. Well, then I guess I would say just two things quickly. Gross was pending in the Supreme Court, but the decision was a surprise. I think everybody recognized that. On the willfulness issue, just very quickly. The district court followed it correctly. There was no evidence that Mr. Kennedy, who was the person who, you know, made this incredible statement, but the jury believed it, and we're not challenging that today. But – and that was the sum and substance of that evidence. But there was no evidence that he knew of the Age Discrimination Act. And that's what the Thurston case and Hazen papers say you have to have. The district court got that right. On their motion, they do two things. First of all, they say that all evidence that's favorable to the moving party has to be ignored. That's not the law. I think the law is that you consider the evidence as a whole. You can't draw inferences and things like that. And then they do something that they've never done before, and they argue for the first time that Kennedy was the sole decision maker. He never argued that. Even in his main brief, you will notice that that's not argued. He was the decision maker. The decision maker went from – it was the – started as high as the legal department. It was the personnel department, and then it was the supervisor, the next supervisor, and then Kennedy. All five people were involved in that decision. All right. You have extra time. Judge Schroeder, if I could, maybe. Mr. Rumpf, Mr. Redinger, have you true tried to settle this case? Your Honor – Have you used our good services of settlement, conference? Have you even tried? Your Honor, I'm going from here to Roseanne A. actually afterwards on another case. The problem with settling this case, Your Honor – Well, now, just – I don't want to know your troubles. Conversation. All I'm trying to say is this. If I were faced – With another trial. With another trial, and I were faced with losing my case altogether for failing to have filed it – served it, and I were faced with the opportunity now to settle this with this running in the circuit court, I think I would try to settle this case. Your Honor, there's a – I don't want you to tell me all your problems. I just want you to say – I want you to think about this. Well, Your Honor, we've thought about it. But there's – Your Honor alluded to it in the beginning of the argument with Mr. Rumpf. There is another potential defendant sitting out there, and that makes it impossible for us to get to a number that makes sense. That's the bottom line. I'm just trying to give you some Idaho talk. I hear you, Judge. I did ask for that. I asked for that with the services of the Ninth Circuit, and we didn't get it. There was a – according to our records, there was a telephone conference call, and then it was determined that it was not going to be put into the program, but we don't know why or what happened or anything. I mean, I think this was a pretty dang good case in Idaho. If I were sitting on the district bench, you all would be in the settlement conference whether you liked it or not.  Thank you, Your Honor. Do I understand that you do not wish the case – the court would be happy to withhold submission of the case pending pursuit of settlement if you wish to do that. If you are convinced that there's no possibility, we won't do that. Then you're faced with the alternatives that you've just – I would like to. Okay. Well, we could certainly talk, Your Honor. I'm not – should we hold off and just notify the court? We won't order the case submitted at this time. We'll issue an order.
judges: Moody, Schroeder, Smith N. R.